# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

PAULA GIMELLO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMERICAN AIRLINES GROUP INC.,

Defendant.

Case No. _____

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Paula Gimello ("Plaintiff"), individually and on behalf of all others similarly situated, alleges for her Class Action Complaint against American Airlines Group Inc. ("AAG" or "Defendant"), as follows:

## NATURE OF THE CASE

1.     In the midst of the greatest public health and economic crisis in living memory, Defendant, one of the world's largest passenger air carriers, has sought to shift its losses onto its innocent passengers, furthering the financial hardship endured by people across the country.

2.     Each of Defendant's airfare tickets encompasses a contractual agreement between it and its passengers. That agreement gives passengers the right to a refund if their flight is cancelled.

3.     With mounting cancellations due to the Covid-19 pandemic, Defendant has sought to refrain from paying out the refunds for cancelled flights to which its passengers are entitled.

4.     Plaintiff brings this action on behalf of herself and a class of similarly situated individuals who were deprived of refunds for cancelled flights.

5.     Defendant has quietly sought to force its passengers to endure the financial losses that its own contract created for it in the entirely foreseeable scenario that world occurrences would disrupt the travel industry.

6.     Defendant's uniform conduct is equally applicable to the class.  Plaintiff brings this class action against Defendant for breach of contract and seeks an order requiring Defendant to, among other things: (1) refrain from issuing travel credits in lieu of refunds to any Class member who has not requested travel credits; and (2) pay damages and/or restitution to Plaintiff and Class members.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed Class has more than 100 members, the Class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

8.     The Court has personal jurisdiction over Defendant because Defendant is authorized to and conducts substantial business in Pennsylvania and within this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District.

## PARTIES

10.     Plaintiff Paula Gimello is a resident of the State of New Jersey.

11.     Defendant American Airlines Group Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas.

## FACTUAL ALLEGATIONS

12.     AAG touts itself as "one of the largest airlines in the world."[1] It is a holding company and its principal, wholly-owned subsidiaries are American Airlines, Inc. (American), Envoy Aviation Group Inc. (Envoy), PSA Airlines, Inc. (PSA) and Piedmont Airlines, Inc. (Piedmont).[2]

13.     AAG operates over 6,700 daily flights to 350 destinations in more than 50 countries through hubs and gateways in Charlotte, Chicago, Dallas/Fort Worth, London Heathrow, Los Angeles, Miami, New York, Philadelphia, Phoenix and Washington, D.C.

---

[1] https://www.aa.com/i18n/customer-service/about-us/american-airlines-group.jsp (last visited June 10, 2020).

[2] American Airlines Group Inc., Form 10-K, December 31, 2019. https://americanairlines.gcs-web.com/static-files/d46a00e3-db05-4a91-af7a-fbe0fc2a7f08 (last visited June 10, 2020).

14.     In 2019, approximately 215 million passengers boarded AAG-operated flights.

15.     AAG is also a founding member of the oneworld® alliance, whose members and members-elect offer nearly 14,250 flights daily to 1,100 destinations in 180 countries and territories.

16.     AAG offers and sells flight tickets directly to customers through several distribution channels, including its website www.aa.com and AAG's mobile application. Customers make monetary payments to AAG in exchange for a selected flight itinerary that conforms to a customer's specifically selected travel schedule.

17.     AAG also sells flight tickets through AAG reservation centers, third-party websites and travel agencies.

18.     AAG collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

19.     As part of each ticket purchase, AAG makes a promise and warranty to customers that in the event of a flight cancellation, the airline must either re-accommodate passengers on the next available flight or refund the passengers.

20.     AAG warrants that "[w]hen your flight is canceled or a delay will cause you to miss your connection, we'll rebook you on the next flight with available seats.

If you decide not to fly because your flight was delayed or canceled, we'll refund the remaining ticket value and any optional fees."[3]

21.    AAG further warrants that "[i]f the delay is our fault or you're diverted to another city, and we don't board before 11:59 p.m., local time on your scheduled arrival day, we'll arrange an overnight stay or cover the cost of an approved hotel, if available."

22.    AAG's Conditions of Carriage does not promise, permit, or require the issuance of any travel credits or coupons in lieu of monetary refunds in the event of cancellation.

23.    Under U.S. law, 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section.  Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

### *AAG's Response to the Covid-19 Pandemic*

24.    On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

---

[3] https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp?locale=en_HK (last visited June 10, 2020).

25.     As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

26.     On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

27.     Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the countries where Defendant offers air travel services.

28.     Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

29.     The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

30.     It was entirely known and foreseeable to AAG that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

31.     Yet, AAG quietly ceased honoring contractual agreements with customers, including Plaintiff and the putative Class, by discontinuing full monetary refunds for cancelled and substantially rescheduled flights.

32.     Contrary to the terms of its contracts with its customers, AAG's website states under "Receipts and refunds" that "[i]f your trip was canceled, you'll be able to use the value of your unused ticket and seat payments toward a future trip. We'll send you an email with the information you'll need to rebook your trip."[4] It states further: "We have a lot of refund requests so it's taking longer than usual. If your ticket qualifies for a refund, you should hear from us within 7 days."

33.     These options are contrary to AAG's contractual promises, which require AAG to simply offer either a refund or rebooking on the next available flight. AAG's contracts with its passengers does not promise, permit, or require issuance of any travel credits or coupons in lieu of monetary refunds in the event of cancellation. Indeed, AAG's contracts with passengers make no mention of the possibility of credits or vouchers for future travel, and such an offer is inconsistent with the promises AAG made to its customers.

34.     Instead of providing an automatic refund, as promised, AAG requires its customers to navigate through its website.

---

[4] https://www.aa.com/i18n/customer-service/contact-american/receipts-and-refunds.jsp?locale=en_HK (last visited June 10, 2020).

35.    The front page of www.aa.com has a banner and blue link entitled "View the latest information on our response to coronavirus (COVID-19). The "Coronavirus (COVID-19) updates" section of the website simply directs customers to "visit aa.com" in the event the customer "need[s] to change [] travel plans."[5]

36.    A refund request form is not referenced on AAG's "Coronavirus (COVID-19) updates" section, and is only located by searching the website specifically for the refund request form.

37.    AAG has established numerous additional bureaucratic barriers which prevent many passengers from receiving a monetary refund, ensuring a windfall to AAG because it knows many customers will be unable to successfully complete the refund request process.

38.     Upon refund requests, AAG is uniformly denying refunds to customers and forcing them to accept travel credits or coupons.

39.    AAG also sets harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

40.    The practice of offering expiring credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

---

[5] http://news.aa.com/coronavirus/ (last visited June 10, 2020).

41.     The future travel credits provide AAG additional opportunities to charge service, processing, baggage, insurance, and other fees that will ensure AAG additional future profits—while retaining Plaintiff's cash in the interim—substantially diminishing any value for Plaintiff and the putative Class.

42.     Recognizing the abuse, and potential for abuse, by AAG and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind airlines companies that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

43.     On April 3, 2020, the DOT issued a notice to remind carriers "that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." It notes that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."[6]

44.     The notice continues that:

> [t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result,

---

[6] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last accessed June 10, 2020).

passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier.1 The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).2 The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

45.     In addition to violation of its own Conditions of Carriage, AAG has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and provide full refunds to its passengers.

46.     AAG deprived Plaintiff and the Class of the refunds to which they are entitled by 1) failing to provide cash refunds or refunds to their credit or debit cards; 2) issuing credits or coupons in place of refunds; 3) rendering it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or 4) obscuring passengers' right to a monetary refund.

### *Plaintiff's Use of AAG's Services*

47.     On or about February 2, 2020, Plaintiff purchased a one-way ticket for travel from St. Maarten to Philadelphia, Pennsylvania, departing on March 17, 2020.

48.     Plaintiff's flight was subsequently cancelled by AAG.

49.     At the time Plaintiff purchased the ticket, Plaintiff understood that she would be entitled to a refund if her flight was cancelled.

50.     Plaintiff spent 9 hours on hold with AAG customer service trying to rebook her flight before the Pennsylvania airport was closed indefinitely.

51.     AAG failed to rebook or otherwise re-accommodate Plaintiff. As a result, Plaintiff spent $605 on a new flight and $200 on hotel accommodations.

52.     Despite Plaintiff's requests for monetary refunds, AAG failed to provide a refund to Plaintiff and, instead, only offered Plaintiff travel credits for use on a future AAG flight.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Class:

> All persons residing in the United States or its territories who purchased tickets for travel on an AAG flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were cancelled by AAG, and who were not provided a refund.

54.     Excluded from the Class is Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendant. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after she has had an opportunity to conduct discovery.

55.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable. Defendant carries over 200 million passengers per year on tens of thousands of flights. A significant percentage of those flights during the Class period have been cancelled. At a minimum, there are tens of thousands of Class

members but very likely many more. The exact size of the proposed Class and the identity of all class members can be readily ascertained from Defendant's records.

56.    <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.    Whether Defendant formed contracts with its passengers in selling them tickets for air travel;

b.    Whether Defendant's conduct breaches the terms of its contracts with its passengers, including its Conditions of Carriage;

c.    Whether Defendant is required to provide a refund, rather than travel credits, to passengers for cancelled flights.

d.    The nature of the relief, including equitable relief, to which Plaintiff and the Class are entitled.

57.    <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of other Class members. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

58.    <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

59.     <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class members. The claims of Plaintiff and individual Class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for Class members to seek redress individually.  Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

60.     Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

61.     Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

<u>**COUNT I**</u>
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

62.     Plaintiff hereby re-alleges every factual allegation contained above.

63.     Defendant has entered into contracts with Plaintiff and Class members with respect to the purchase of airfare tickets.

64.     The contracts were offered by Defendant and formed at the time Plaintiff and the Class accepted them by purchasing their tickets.

65.     The contracts that govern the transactions at issue in this case require refunds for cancelled flights where the passenger does not elect to take substitute transportation.

66.     Plaintiff and the Class performed all their obligations under these contracts.

67.     Defendant breached its contracts with Plaintiff and the Class when it sought to provide travel credits or coupons in lieu of refunds for passengers on cancelled flights.

68.     Defendant's breaches were willful and not the result of mistake or inadvertence.

69.     Plaintiff and the Class have sustained damages as a result of Defendant's breaches of contract in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court grant the following relief:

A.      Certify this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), and, pursuant to Fed. R. Civ. P. 23(g), appoint Plaintiff as Class representative and her counsel as Class counsel.

B.      Award Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement.

C.      Award Plaintiff and the Class equitable, injunctive, and declaratory relief as may be appropriate. Plaintiff, on behalf of the Class, seeks appropriate injunctive relief designed to, *inter alia*, ensure against the unlawful conduct alleged herein.

D.      Award Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable.

E.      Award Plaintiff and the Class reasonable attorneys' fees and costs as allowable.

F.      Award Plaintiff and the Class such other favorable relief as allowable under law or at equity.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Dated:  June 15, 2020

Benjamin F. Johns
*BFJ@chimicles.com*
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: 610-642-8500
Fax: 610-649-3633

Robert Ahdoot*
*rahdoot@ahdootwolfson.com*
Bradley K. King*
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585

David R. Dubin*
ddubin@ldclassaction.com
Nicholas A. Coulson*
ncoulson@ldclassaction.com
**LIDDLE & DUBIN, P.C.**
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025
(**pro hac vice* applications forthcoming)

*Counsel for Plaintiff and the Putative Class*